IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EVELYN LYLES** | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil Case No. 1:10-cv-1424 (ESH) |
| | : | |
| **D.C. DEPARTMENT OF MENTAL HEALTH** | : | |
| | : | |
| Defendant | : | |

## AMENDED COMPLAINT WITH JURY DEMAND

Plaintiff Evelyn Lyles ("Lyles"), by and through her undersigned counsel, Mark G. Chalpin, Esq., respectfully amends her complaint against Defendant D.C. Department of Mental Health ("DMH") for sexual harassment/sex discrimination under the DC Human Rights Act and Title VII of the Civil Rights Act of 1964, as amended; disability discrimination under the DC Human Rights Act and the Americans with Disabilities Act, as amended; age discrimination under the DC Human Rights Act and the Age Discrimination in Employment Act, as amended; and employment retaliation under the DC Human Rights Act and Title VII of the Civil Rights Act of 1964, as amended, pursuant to Fed. R. Civ. Pro. 15(a) as follows:

1. Lyles is an individual residing in Maryland who is disabled and currently 60 years of age who was an employee of DMH from 1994 until her RIF in August 2009 as a Grade 12 Vocational Rehabilitation Specialist in DMH's Vocational Rehabilitation Services.

2. DMH is an agency of the District of Columbia.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331 because it presents a question of federal law. Specifically, this Court has jurisdiction under 28 U.S.C. § 1331, 29 U.S.C. § 623, 42 U.S.C. §§ 2000e-2, 2000e-3 and 2000e-5, 12112 and 12117.

4. Venue is proper under 42 U.S.C. § 1391(b) in that DMH may be found in the District of Columbia.

5. On or about February 15, 2008, Lyles initiated contact with DMH's EEO personnel regarding her claims of sexual harassment/sex discrimination, disability discrimination and age discrimination.

6. On or about March 20, 2008, Lyles timely filed an EEO charge with the D.C. Office of Human Rights ("OHR") in OHR No. 08-310-DC (CN) alleging sexual harassment/sex discrimination, age discrimination and disability discrimination. She later amended her charge to include retaliation.

7. In 2008, the Washington Field Office of the U.S. Equal Employment Opportunity Commission ("EEOC") opened Charge No. 10C-2008-00313 upon cross-filing of Lyles' EEO charge to OHR. On or about February 3, 2009, OHR transferred Lyles' EEO charge to the EEOC for processing.

8. On or about May 26, 2010, EEOC issued a right-to-sue notice to Lyles but mailed it to a previous address. As a result of the mailing of the notice to a previous address, Lyles did not receive the right-to-sue notice until July 26, 2010 after EEOC remailed the notice to her correct address on or about July 22, 2010.

9. On or about August 24, 2010, Lyles filed the instant case within 90 days of receiving the right-to-sue notice.

## FACTS

10. From March 2007 through October 2008, Lyles' subordinate, Steven Miller ("Miller") engaged in constant sexual harassment of Lyles in the workplace including patting her buttocks and touching her breasts, propositioning her, and making lewd gestures with his hands and tongue. Miller's sexual harassment of Lyles took place at least once a week and caused Lyles severe emotional pain and distress.

11. From June 2007 through November 2007, Lyles repeatedly requested several times per month to her first-level supervisor, Carroll Parks ("Parks"), that he terminate or transfer Miller or transfer her out of the office. Parks' invariable response was that he would "get back" to Lyles concerning her complaint and then he would not pursue the matter further. Parks invariably procrastinated and made excuses for not taking action against Miller or transferring Lyles. When Lyles complained to DMH's Human Resources about Parks' inaction, Human Resources simply referred her back to Parks. In November 2007, Parks finally transferred Miller from Lyles' supervision but reassigned him to the same department such that Lyles still encountered Miller each working day. After Parks' transfer of Miller, Lyles continued repeatedly to request to Parks until October 2008 that he either transfer Miller or her out of the office so that she would have no further contact with Miller. Parks replied that he did not care how Lyles felt or what she wanted and refused to take action.

12. From June 2007 through October 2008, Lyles was subjected to a hostile work environment based on sexual harassment due to Miller's constant sexual

harassment and Parks' failure to remediate the situation. As a direct and proximate result of this hostile work environment, Lyles was unable to provide her normal level of service to clients, her Post-Traumatic Stress Disorder ("PTSD") was triggered, and she required significant treatment by her psychiatrist and primary care physician.

13. Lyles is disabled due to PTSD and Major Depression which substantially limit her major life activities including, *inter alia*, eating, sleeping, driving, parenting, and social interaction.

14. In January 2008, Lyles requested to DMH Director Stephen Baron ("Baron") that she be transferred out of her office as an accommodation for her disabilities, PTSD and clinical depression, because Miller's continued presence and threatening behavior made the workplace unbearable for Lyles. Baron referred Lyles to DMH Administrative Officer Gillian Daniels, who then referred Lyles to DMH EEO liaison Al Boone ("Boone"). At that point, Lyles initiated an EEO charge with Boone. On or about June 27, 2008, Lyles' primary care physician wrote Baron that Lyles needed to be reassigned to a non-hostile, non-threatening work environment for medical reasons. On or about July 2, 2008, Baron wrote Lyles and referred her to Juanita Price, Chief Executive Officer, Community Services Agency, concerning a reassignment to a non-threatening, non-hostile work environment due to her disabilities. DMH failed to reasonably accommodate Lyles' disabilities.

15. In April 2008, Parks charged Lyles with 32 hours absent without leave ("AWOL") while Lyles was on sick leave for PTSD and after her doctors had submitted documentation as to her need for sick leave. Parks charged Lyles AWOL in retaliation for filing her EEO charge.

16. On or about October 28, 2008, DMH detailed Lyles to a position as a Community Services Worker at the Day Services Program at 3849 Alabama Avenue, S.E., where her duties and responsibilities were to be subordinate to staff, including driving them around the local community. Her duties and responsibilities were significantly diminished from those as a Vocational Rehabilitation Specialist. DMH never provided her a position description as a Community Services Worker. The detail was originally scheduled to be 120 days but was extended until March 2009, when Lyles went on sick leave due to her disabilities. DMH detailed Lyles in retaliation for filing her EEO charge and instead of reasonably accommodating her disabilities, thus engaging in disability discrimination.

17. In December 2008 and/or January 2009, Lyles applied for promotion to the positions of Quality Improvement Coordinator ("QIC") and Home and Community Based Services Coordinator ("HCBSC") at DMH. She was qualified to be QIC because from 1994 to 2000 she performed the duties and responsibilities of this position by evaluating and assessing job performance of DMH personnel based in community settings for services to the patient population under the auspices of DMH. She was qualified to be HCBSC because her responsibilities as a Vocational Rehabilitation Specialist included evaluation of community based sites for quality improvement and delivery of overall clinical services to the mentally ill.

18. DMH did not promote Lyles to either position of QIC or HCBSC but rather hired a younger person for each position. On information and belief, the younger person for each position had inferior qualifications and experience to that of Lyles for each position.

19.     DMH never returned Lyles to her Vocational Rehabilitation Specialist position after her detail.  On or about August 1, 2009, DMH eliminated Lyles' position as a Vocational Rehabilitation Specialist in retaliation for filing her EEO charge.

20.     DMH failed and refused to pay Lyles severance pay of $37,069.50 after eliminating her position in retaliation for filing her EEO charge.

## COUNT I
### (Sexual Harassment/Sex Discrimination)

21.     Paragraphs 1 through 20 are incorporated by reference as if fully set forth herein.

22.      DMH maliciously, willfully and intentionally discriminated against Lyles on the basis of her sex in violation of both the D.C. Human Rights Act, D.C. Official Code §§ 2-1401.01 *et seq*., and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2 *et seq*., by creating a hostile environment based on sexual harassment that was so severe and pervasive as to alter the conditions of Lyles' employment and create an abusive working environment.

23.     As a direct and proximate result of DMH's malicious, willful and intentional sex discrimination against Lyles, Lyles suffered financial damage, injury to her reputation, diminution of her duties and responsibilities, and emotional pain and distress.  She has also incurred attorney's fees.

WHEREFORE, Lyles seeks judgment against DMH under Count I of the Complaint for the following relief:

A)     Compensatory damages in excess of $100,000, the exact amount to be determined at trial;

  B) Punitive damages in excess of $100,000, the exact amount to be determined at trial;

  C) Her reasonable attorney's fees and costs;

  D) Pre-judgment and post-judgment interest; and

  E) Such other and further relief as the Court deems proper.

**COUNT II**
**(Disability Discrimination)**

24. Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

25. Lyles has disabilities, PTSD and Major Depression, which substantially limit her major life activities.

26. Lyles was qualified to perform the essential functions of a Vocational Rehabilitation Specialist with or without reasonable accommodation.

27. Lyles suffered an adverse employment action, transfer to the Day Treatment Program, due to her disabilities.

28. As a direct and proximate result of DMH's malicious, willful and intentional disability discrimination in violation of the DC Human Rights Act, D.C. Official Code §§ 2-1401.01 *et seq.*, and the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 *et seq.*, Lyles suffered financial damage, injury to her reputation, diminution of her duties and responsibilities, and emotional pain and distress. She has also incurred attorney's fees.

  WHEREFORE, Lyles seeks judgment against DMH under Count II of the Complaint for the following relief:

    A)    Compensatory damages in excess of $100,000, the exact amount to be determined at trial;

    B)    Punitive damages in excess of $100,000, the exact amount to be determined at trial;

    C)    Her reasonable attorney's fees and costs;

    D)    Pre-judgment and post-judgment interest; and

    E)    Such other and further relief as the Court deems proper.

## COUNT III
### (Age Discrimination)

29.    Paragraphs 1 through 28 are incorporated by reference as if fully set forth herein.

30.    Plaintiff was 58 years of age when she applied for promotion to QIC and HCBSC. She was qualified for both positions based on her experience at DMH.

31.    DMH maliciously, willfully and intentionally failed to promote Lyles to either position in discrimination against her age but rather hired persons younger than Lyles for each position who had inferior qualifications and experience to that of Lyles for each position.

32.    As a direct and proximate result of DMH's malicious, willful and intentional age discrimination in violation of the DC Human Rights Act, D.C. Official Code §§ 2-1401.01 *et seq.*, and the Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621 *et seq.*, Lyles suffered financial damage, injury to her reputation, diminution of her duties and responsibilities, and emotional pain and distress. She has also incurred attorney's fees.

WHEREFORE, Lyles seeks judgment against DMH under Count III of the Complaint for the following relief:

A) Compensatory damages in excess of $100,000, the exact amount to be determined at trial;

B) Punitive damages in excess of $100,000, the exact amount to be determined at trial;

C) Her reasonable attorney's fees and costs;

D) Pre-judgment and post-judgment interest; and

E) Such other and further relief as the Court deems proper.

## COUNT IV
### ( Employment Retaliation)

33. Paragraphs 1 through 32 are incorporated by reference as if fully set forth herein.

34. DMH maliciously, willfully and intentionally retaliated against Lyles for filing EEO charges of sexual harassment/sex discrimination, age discrimination, disability discrimination and employment retaliation in violation of both the D.C. Human Rights Act, D.C. Official Code §§ 2-1401.01 *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2 *et seq.*, by, *inter alia*: 1) charging her 32 hours AWOL, 2) detailing her as a Community Services Worker at the Day Treatment Program with significantly diminished duties and responsibilities from her position as a Vocational Rehabilitation Specialist, 3) failing to return her to her position as a Vocational Rehabilitation Specialist at the end of her detail, 4) failing to promote her to either QIC or HCBSC, 5) separating her through a RIF, thereby eliminating her position

as a Vocational Rehabilitation Specialist, and 6) failing and refusing to pay her severance pay upon her separation.

35.     As a direct and proximate result of DMH's malicious, willful and intentional retaliation, Lyles suffered materially adverse actions that well might dissuade a reasonable worker from making or supporting a charge of discrimination.

36.     As a direct and proximate result of the malicious, willful and intentional retaliation by DMH, Lyles has suffered financial damage, injury to her reputation, diminution of her duties and responsibilities, and emotional pain and distress. She has also incurred attorney's fees.

WHEREFORE, Lyles seeks judgment against DMH under Count IV of the Complaint for the following relief:

A)      Compensatory damages in excess of $100,000, the exact amount to be determined at trial;

B)      Punitive damages in excess of $100,000, the exact amount to be determined at trial;

C)      Her reasonable attorney's fees and costs;

D)      Pre-judgment and post-judgment interest; and

E)      Such other and further relief as the Court deems proper.

**Lyles demands a jury trial on all counts triable by a jury.**

        Respectfully submitted,


          /s/ Mark G. Chalpin
        MARK G. CHALPIN, ESQ. #366794
        1509 Woodwell Road
        Silver Spring, MD 20906
        (301) 460-5900
        Attorney for Plaintiff

DATE: September 24, 2010