UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
─────────────────────────────────
                                 )
EVELYN LYLES,                    )
                                 )
        Plaintiff,               )
                                 )
    v.                           )    Civil Action No. 10-1424 (ESH)
                                 )
DISTRICT OF COLUMBIA             )
                                 )
        Defendant.               )
                                 )
─────────────────────────────────
```

## MEMORANDUM OPINION

Plaintiff Evelyn Lyles, a sixty year old female, has sued her former employer, the District of Columbia Department of Mental Health ("DMH"). Plaintiff claims that DMH discriminated against her on the basis of her sex, age, and disability, and retaliated against her for engaging in protected activity in violation of the DC Human Rights Act, D.C. Code § 2-1401.01 *et seq.*, the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* Before the Court is defendant's motion to dismiss, or in the alternative, for summary judgment. For the reasons set forth below, defendant's motion will be granted in part and denied in part.

## BACKGROUND

### I.  FACTUAL HISTORY

Plaintiff was an employee of DMH from 1979 until 2009. (Second Amended Complaint with Jury Demand ("Complaint") ["Compl."] ¶ 1; Defendant's Motion to Dismiss ["Def.'s Mot."] at Ex. B.) Plaintiff served as a Vocational Rehabilitation Specialist from 1994 until October 2008. (Compl. ¶¶ 1, 16.) In August 2009, her position was terminated due to a reduction in force ("RIF"). (Compl. ¶ 1.)

### A. Sexual Harassment

From March 2007 until October 2008, plaintiff alleges that Steven Miller, her subordinate, sexually harassed her on a weekly basis by propositioning her, making lewd gestures, and touching her buttocks and breasts. (Compl. ¶ 10.) Plaintiff requested several times from June to November 2007 that her first-level supervisor, Carroll Parks, either (1) terminate or transfer Miller or (2) transfer plaintiff. (Compl. ¶ 11.) Plaintiff eventually contacted DMH Human Resources when Parks failed to act. (*Id.*) In November 2007, Parks transferred Miller to a different position in the same department where plaintiff still encountered Miller on a daily basis. (*Id.*) From that point through October 2008, plaintiff repeatedly asked Parks to transfer her or Miller, but Parks allegedly told her that he did not care how she felt or what she wanted. (*Id.*)

As a result of Miller's harassment and Parks' refusal to remedy the situation, plaintiff alleges that she suffered "severe emotional pain and distress," triggering post-traumatic stress disorder ("PTSD"). (Compl. ¶¶ 10, 12.) Plaintiff's PTSD and resulting depression "required significant treatment by her psychiatrist and primary care physician" and substantially limited her life activities, including "eating, sleeping, driving, parenting, and social interaction." (Compl. ¶¶ 12, 13.)

### B. Disability

In January 2008, plaintiff contacted DMH Director Stephen Baron to again request to be transferred out of her office based on her disabilities caused by the hostile work environment created by Miller. (Comp. ¶ 14.) On February 15, 2008, plaintiff initiated contact with DMH EEO liaison Al Boone which led to the filing of a formal EEO charge on June 4, 2008. (Compl. ¶¶ 5, 14; Def.'s Mot. at Ex. B.) On or about June 27, 2008, plaintiff's primary care physician

contacted Baron to request a nonhostile, nonthreatening work environment for plaintiff based on her medical conditions. (Compl. ¶ 14.) On July 2, 2008, Baron referred plaintiff to Juanita Price, the CEO of the Community Services Agency within DMH, for reassignment. (*Id.*) On October 28, 2008, DMH detailed plaintiff to the position of Community Services Worker at the Day Services Program. (Compl. ¶ 16.) The reassignment was designed to last at least 120 days and was extended to March 2009 when plaintiff took sick leave. (*Id.*; Plaintiff's Opposition to Defendant's Motion to Dismiss ["Pl.'s Opp."] at Ex. 2.) As a Community Services Worker, plaintiff alleges that her "duties and responsibilities were significantly diminished" from her previous position as a Vocational Rehabilitation Specialist because, in part, she was now subordinate to staff members. (Compl. ¶ 16.)

**C.     Age**

In December 2008 and January 2009, plaintiff applied for two positions, both which would have been promotions from her position as a Vocational Rehabilitation Specialist. (Compl. ¶ 17.) The first position was Quality Improvement Coordinator ("QIC"). (*Id.*) Plaintiff argues that she was qualified for this position because her previous experience included the evaluation and assessment of DMH personnel from 1994 to 2000, which matched the duties of the new position. (*Id.*) The second position was Home and Community Based Services Coordinator ("HCBSC"). (*Id.*) Plaintiff argues that she was qualified for this position because her previous experience included evaluation of community-based sites and provision of clinical services to the mentally ill, both duties required by the new position. (*Id.*) Plaintiff did not receive either promotion. (*Id.*) Instead, plaintiff alleges that each position was filled by a younger person who "had inferior qualifications and experience." (Compl. ¶ 18.)

### D. Retaliation

In April 2008, plaintiff's supervisor Parks charged her thirty-two hours absent without leave ("AWOL") while plaintiff was sick from work. (Compl. ¶ 15.) Plaintiff argues that she was out due to PTSD and that her doctors submitted paperwork to that effect. (*Id.*) Plaintiff alleges that this action was in retaliation for her contact with DMH EEO liaison Boone in February 2008. (Compl. ¶¶ 14, 15.)

On August 1, 2009, DMH eliminated plaintiff's position as a Vocational Rehabilitation Specialist through a RIF. (Compl. ¶ 1, 19; Pl.'s Opp. at Ex. 3.) Plaintiff argues that her position was eliminated in retaliation for filing an EEO claim and that DMH also failed to give her $37,069.50 in severance pay. (Compl. ¶¶ 19, 20.)

Based on the above facts, plaintiff asserts that defendant retaliated against her in six ways: (1) defendant charged her thirty-two hours AWOL; (2) defendant detailed her to the Day Treatment Program, which had significantly diminished duties and responsibilities from her previous position; (3) defendant failed to place her back in her previous position; (4) defendant failed to promote her to either QIC or HCBSC; (5) defendant terminated her job through a RIF; and (6) defendant failed and refused to pay severance after her termination. (Compl. at ¶ 34.)

## II. PROCEDURAL HISTORY

On June 4, 2008, plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination alleging that she had been discriminated against based on her sex, disability, age, and personal appearance, and that she had suffered retaliation. (Def.'s Mot. at Ex. B.) The sex charge alleged that the "Acting Leader" had used inappropriate language, patted her on the buttocks, and made lewd gestures with his hands. (*Id.*) In addition, plaintiff noted that she had complained to her superiors but that no action had been taken. (*Id.*) The disability charge alleged that plaintiff had notified supervisors of her disability in 2005 but

4

contains no further details on the specific disability or subsequent actions in response to the disability. (*Id.*) The disability charge also alleges that plaintiff suffered an ankle injury on December 6, 2007, while moving a desk, and that plaintiff's superior held up her workman's compensation paperwork. (*Id.*) The age charge alleges that employees over forty were informed at a staff meeting that they would need to look for another job. (*Id.*) Plaintiff also alleges that the CEO told plaintiff that, "You look really good for your age," and that plaintiff's supervisor asked her how old she was on several occasions. (*Id.*) The personal appearance charge alleges that several employees told plaintiff that she was small for someone her age. (*Id.*) The retaliation charge alleges that plaintiff's supervisor threatened to place plaintiff on AWOL without checking her leave balance. (*Id.*)

On January 16, 2009, plaintiff filed an amended charge with the EEOC. (Pl.'s Opp. at Ex. 2.) That charge alleges that plaintiff suffers from a mental impairment and that defendant both failed to accommodate that disability and placed plaintiff in a position outside of her medical restrictions. (*Id.*) It also alleges that plaintiff was denied promotions because of her age and in retaliation for filing an EEO charge. (*Id.*) Finally, it alleges that plaintiff's transfer to the Day Treatment Program was in retaliation for filing an EEO charge. (*Id.*)

Plaintiff received a right-to-sue letter from the EEOC on July 26, 2010, and filed the present civil claim on August 24, 2010. Before the Court are plaintiff's original EEO charge, plaintiff's amended EEO charge, and several documents generated during the EEO's subsequent investigation.

## ANALYSIS

### I. LEGAL STANDARDS

Despite some confusion in this jurisdiction regarding "whether a failure to exhaust administrative remedies is properly brought in a Rule 12(b)(1) motion, as a jurisdictional defect,

or in a Rule 12(b)(6) motion for failure to state a claim," recent cases "favor treating failure to exhaust as a failure to state a claim."  *Hansen v. Billington*, 644 F. Supp. 2d 97, 102  (D.D.C. 2009) (listing cases); *see also Kilby-Robb v. Spellings*, 309 F. App'x. 422, 423 n.1 (D.C. Cir. 2009) ("[T]he mandatory exhaustion requirement is not jurisdictional.").

As the Supreme Court recently held in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), "[t]o survive a motion to dismiss [under Rule 12(b)(6) of the Federal Rules of Civil Procedure], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must be dismissed under Rule 12(b)(6) if it consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  The allegations in plaintiff's complaint are presumed true at this stage and all reasonable factual inferences must be construed in the plaintiff's favor.  *Maljack Prods., Inc. v. Motion Picture Ass'n of Am.*, 52 F.3d 373, 375 (D.C. Cir. 1995).  "However, 'the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.'"  *Hughes v. Abell*, 634 F. Supp. 2d 110, 113 (D.D.C. 2009) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  In deciding a Rule 12(b)(6) motion, a court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."  *Hansen*, 644 F. Supp. 2d at 102 (internal quotation omitted).

If the Court relies on matters outside of the pleadings, then the 12(b)(6) motion must be treated as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Under Rule 56, a motion for summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, . . . admissions on file, . . . [and] affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)). "A dispute about a material fact is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Haynes v. Williams*, 392 F.3d 478, 481 (D.C. Cir. 2004) (quoting *Anderson*, 477 U.S. at 248). A moving party is thus entitled to summary judgment against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. If the nonmovant fails to point to "affirmative evidence" showing a genuine issue for trial, *Anderson*, 477 U.S. at 257, or "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). "While summary judgment must be approached with special caution

in discrimination cases, a plaintiff is not relieved of her obligation to support her allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Calhoun v. Johnson*, No. 95-2397, 1998 WL 164780, at *3 (D.D.C. Mar. 31, 1998), *aff'd* No. 99-5126, 1999 WL 825425, at *1 (D.C. Cir. Sept. 27, 1999) (internal citation omitted).

## II. EXHAUSTION

"[A] timely administrative charge is a prerequisite to initiation of a Title VII action in the District Court." *Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832-33 (1976)). This requirement applies to actions under the ADEA and the ADA as well. *See Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1367-68 (D.C. Cir. 2008) (applying the requirement to ADEA claims); *Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (applying the requirement to ADA claims). If the matter is not resolved informally, the complainant may file a formal complaint against the agency, which the agency must investigate within 180 days of filing. 29 C.F.R. §§ 1614.105(d), 106(e)(2), 108(e). A complainant must file her formal charge within 180 or 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). "Each discrete discriminatory act starts a new clock for filing charges alleging that act" and "[t]he charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Once the agency investigation concludes, the employee has the right to (1) request a hearing and decision from an administrative judge, or (2) request an immediate final decision from the agency. 29 C.F.R. § 1614.108(f). The employee may appeal a decision of the administrative judge or the agency to the EEOC or file a civil action in federal district court within 90 days of the receipt of a notice of final action. 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.401, 1614.407.

In filing a civil action in district court following an EEO charge, an employee may only file claims that are "like or reasonably related to the allegations of the [EEO] charge and grow[] out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (citing *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)) (internal quotation marks omitted). "At a minimum, the Title VII claims must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Id.* (quoting *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)). The Title VII exhaustion requirement also means that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113.

Although the allegations in the EEO charge and the civil complaint must be reasonably related, "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 406 (2008). Thus, "the fact that [plaintiff] describe[s] her allegations with greater specificity in these proceedings does not establish that she failed adequately to present them at the administrative level." *Williams v. Dodaro*, 576 F. Supp. 2d 72, 82-83 (D.D.C. 2008). Further, the ultimate purpose of the exhaustion requirement is to put the agency on notice, not to create insurmountable procedural hurdles for a claimant:

> Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary. Congress wanted to give each agency "the opportunity as well as the responsibility to right any wrong that it might have done." Congress never, however, wanted the exhaustion doctrine to become "a massive procedural roadblock to access to the courts." Rather, "Congress contemplated that the exhaustion doctrine would be held within limits consonant with the realities of the statutory scheme."

> . . . This court has . . . "stress [ed], in particular, that judges slight the legislature's central command if they fail to recall that Title VII was devised as a measure that would be kept accessible to individuals untrained in negotiating procedural labyrinths." The *Loe* court made it clear that adequacy of notice is the core of Title VII's administrative exhaustion requirements, and that "the strictures of common law pleading have no place in a scheme largely dependent upon self-service in drawing up administrative charges."

*Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985) (internal citations omitted) (quoting *President v. Vance*, 627 F.2d 353, 362 (D.C. Cir. 1980); *Loe v. Heckler*, 768 F.2d 409, 416-20 (D.C. Cir. 1985)); *see also Hampton v. Schafer*, 561 F. Supp. 2d 99, 102 (D.D.C. 2008) (citing *Brown*).

The same standard applies in the ADA context: "[E]very detail of the eventual complaint need not be presaged in the EEOC filing, but the substance of an ADA claim . . . must fall within the scope of 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Marshall*, 130 F.3d at 1098 (quoting *Park*, 71 F.3d at 907).

### A. Exhaustion of Title VII Claims

#### 1. Sexual Harassment

Defendant originally argued that plaintiff failed to exhaust her administrative remedies as to her Title VII sexual harassment claim in Count I. (Def.'s Mot. at 14-16.) However, defendant concedes in its Reply that plaintiff has exhausted those remedies. (Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Reply") ["Def.'s Rep."] at 2-3.) The Court agrees. Thus, defendant's motion to dismiss as to the exhaustion of plaintiff's Title VII sexual harassment claim will be denied.

#### 2. Retaliation

Plaintiff asserts six separate acts of retaliation in response to her filing of an EEO charge. Plaintiff asserts that (1) defendant charged her thirty-two hours AWOL; (2) defendant detailed her to the Day Treatment Program, which had significantly diminished duties and responsibilities

from her previous position; (3) defendant failed to place her back in her previous position; (4) defendant failed to promote her to either QIC or HCBSC; (5) defendant terminated her job through a RIF; and (6) defendant failed and refused to pay severance after her termination. (Compl. ¶ 34.) Defendant asserts that five of these claims were not reasonably related to plaintiff's EEO charge. (Def.'s Rep. at 13-16.)[1]

In terms of retaliation, plaintiff's original EEO charge states: "Sometime in January 2008, the Director of Adult Services has threatened to place me on absence without leave without checking my leave balance." (Def.'s Mot. at Ex. B.) Plaintiff's amended EEO charge states:

> I have been denied promotions . . . because I have opposed and complained about what I in reasonable good faith believe to be discrimination at work.
>
> I formerly worked as a Therapist up until the that [sic] time I made my EEOC complaint in 6/08. Since then, [defendant] removed my job responsibilities, prohibited me from providing direct services to my patients, and left me in a job without responsibilities, all in an effort to force me to quit.

(Pl.'s Opp. at Ex. 2.)

Defendant asserts that plaintiff's first claim of retaliation, charging her thirty-two hours AWOL, is not reasonably related to her EEO charge because her charge only contains the January 2008 threat of placing her on AWOL and no subsequent charge of *actually* placing her on AWOL. (Def.'s Rep. at 15-16.) The Court agrees that the two claims are not reasonably related. Even if a threat and the subsequent execution of that threat were closely enough related that raising an EEO charge for the former would exhaust remedies for the latter, the facts in this instance do not withstand scrutiny. Plaintiff alleges that the threat occurred in January 2008.

---

[1] Defendant concedes that the second claim of retaliation is reasonably related to plaintiff's EEO charge. (Def.'s Rep. at 2-3.) Accordingly, defendant's motion to dismiss will be denied as to that claim of retaliation.

(Compl. ¶ 14.) Plaintiff did not initiate contact with the EEO, however, until a month later in February 2008 (which eventually resulted in the filing of a formal complaint in June 2008). (Compl. ¶¶ 5, 14; Def.'s Mot. at Ex. B.) Thus, plaintiff's claim alleging that she was threatened with being placed on AWOL in January 2008 could not be retaliation for filing an EEO charge because plaintiff had not yet initiated the EEO process when the alleged threat was made. Therefore, plaintiff's current claim that defendant retaliated against her by charging her thirty-two AWOL hours is not reasonably related to her EEO charge.

Defendant asserts that plaintiff's third claim of retaliation, defendant's failure to place plaintiff back in her original position after assigning her to the Day Treatment Program, is not reasonably related to her EEO charge because the charge does not mention that allegedly adverse action. (Def.'s Rep. at 15.) The Court agrees. Defendant's reassignment of plaintiff to the Day Treatment Program is a distinct and separate act from its alleged failure to place plaintiff back in her former position; thus, exhaustion of the former does not relate to exhaustion of the latter. Because neither the original EEO charge nor the amended EEO charge mentions that plaintiff requested to be transferred back to her old position, or that defendant refused to do so, the two claims are not reasonably related.

Defendant asserts that plaintiff's fourth claim of retaliation, defendant's failure to promote plaintiff to QIC or HCBSC, is not reasonably related to the general assertion in her EEO charge that she was denied promotions in retaliation for filing her initial EEO charge because the amended EEO charge is not specific enough to connect the two. (Def.'s Rep. at 15.) The Court disagrees. It has long been settled that EEO charges be construed liberally in the context of exhaustion to favor complainants who, as a group, are largely unskilled in the formalities of legal pleading. *See Brown*, 777 F.2d at 14; *see also Hampton*, 561 F. Supp. 2d at 102.

The Court finds the exhaustion of plaintiff's fourth claim of retaliation to be similar to the situation addressed by the *Williams* court. *See* 576 F. Supp. 2d at 82-83. In *Williams*, the court rejected an employer's argument that a more general assertion in an EEO charge was unconnected to a more specific iteration of the same claim in the civil complaint. *See id.* Notably, the court stated that "the fact that [plaintiff] describe[s] her allegations with greater specificity in these proceedings does not establish that she failed adequately to present them at the administrative level." *Id.*

Plaintiff's original EEO charge was initiated in February 2008 and formally filed in June 2008. Plaintiff then applied for, and failed to get, promotions to QIC and HCBSC in December 2008 and January 2009. Plaintiff's amended EEO charge was then filed later in January 2009. That charge stated that, "I have been denied promotions . . . because I have opposed and complained about what I in reasonable good faith believe to be discrimination at work." (Pl.'s Opp. at Ex. 2.) That the Complaint now before the Court, drafted by an attorney, specifies those two promotions in a more particularized manner does not make the amended EEO charge unrelated to the present claim. Further, plaintiff's amended EEO charge was sufficient to put defendant on notice that the period between February 2008, when she first began the EEO process, and January 2009, when she filed the charge, was a period in which plaintiff felt that she had been denied promotions in retaliation for her EEO charges. Accordingly, plaintiff exhausted her administrative remedy as to this retaliation claim.

Defendant asserts that plaintiff's fifth claim of retaliation, eliminating plaintiff's position through a RIF, is not reasonably related to her EEO charge because it does not appear in either her original EEO charge or her amended EEO charge. (Def.'s Rep. at 15.) The Court agrees. Plaintiff's EEO charges outline three allegedly retaliatory acts of discrimination. The first is

denial of promotions, the second is a threat to place plaintiff on leave, and the third is plaintiff's reassignment to the Day Treatment Program. As neither complaint raises the elimination of plaintiff's position in any way, the current claim has not been exhausted.

Defendant asserts that plaintiff's sixth claim of retaliation, failing to pay plaintiff's severance, is not reasonably related to her EEO charge because it does not appear anywhere in either her original EEO charge or her amended EEO charge. (Def.'s Rep. at 15.) The Court agrees. As neither complaint, in any way, raises defendant's failure to pay severance in any way, the current claim has not been exhausted.

### B. Exhaustion of ADA Claims

Plaintiff claims that defendant discriminated against her as a result of her disability— PTSD and major depression. (Compl. ¶¶ 14, 24-28.) Specifically, plaintiff claims that she suffered an adverse employment action when defendant transferred her to the Day Treatment Program. (Compl. ¶¶ 16, 27, 28.) Defendant argues first, that it is unclear what claim plaintiff is proceeding with, and second, that plaintiff's EEO claim and present claim are not reasonably related.

Defendant first argues that the Complaint is unclear about plaintiff's disability claims. (Def's Rep. at 4-5.) Specifically, defendant contends that it is unclear whether plaintiff is proceeding on a failure-to-accommodate claim. (*Id.*) Defendant does not contest that plaintiff is also proceeding on an adverse-employment-action claim as clearly stated in Count II of the Complaint. (*See id.*; *see also* Compl. ¶¶ 27, 28.) Although both claims would have been exhausted, plaintiff's only claim in Count II is the adverse employment action resulting from her transfer to the Day Treatment Program. (Compl. ¶¶ 27, 28.) The Court reads plaintiff's assertion that defendant failed to accommodate her disability in the "Facts" section of her Complaint (Compl. ¶ 14) as background for the formal claim in Count II. Thus, the Court

interprets plaintiff's claim as the clearly stated accusation in Count II, that she suffered an adverse employment action when she was transferred to the Day Treatment Program.

Defendant next argues that plaintiff's claim before the court is not reasonably related to her EEO charge for several reasons. First, defendant argues that plaintiff's initial EEO charge is not reasonably related to the present claim because the EEO charge focuses solely on an ankle injury, making any discussion of mental illness merely "background" information to the physical injury claim. (Def.'s Mot. at 16-17; Def.'s Rep. at 4-7.) The Court agrees. In relation to her disability, plaintiff's initial EEO charge states:

> In 2005, I notified [defendant] of my disability.
>
> On December 6, 2007, I injured my ankle while moving a desk. The Director of Adult Services held up my paperwork because he had refused to sign them. My workman's compensation claim was denied and I am scheduled to go before an Administrative Hearing Judge on July 14, 2008.
>
> I also requested that the Director of Adult Services not yell at me and to move my office because the alleged harasser was working in the same location.

(Def.'s Mot. at Ex. B.) The word "disability" in the first sentence, when read in the context of the rest of the charge, seems to be related to a physical disability that was exacerbated by the 2007 ankle injury, not a separate mental disability. Even if "disability" were reasonably referring to a mental impairment like PTSD or major depression, the charge fails to claim discrimination based on that disability. The denial of the workman's compensation claim and the disagreement over moving plaintiff's office also seem to be related to the ankle injury (or, at most, to the sexual harassment claim preceding the disability claim). (*See id.*)

Second, defendant asserts that plaintiff's amended EEO charge is not reasonably related to the present claim because it fails to specifically mention PTSD and fails to specify any accommodations that she requested. (Def.'s Rep. at 7-8.) The Court disagrees with defendant

15

insofar as plaintiff's lack of specificity means that she fails to exhaust her claim. In relation to her disability, plaintiff's January 2009 amended charge states: "I suffer from a mental impairment that substantially limits one or more of my major life activities. I requested accommodations from [defendant] but it has declined without explanation. It also has assigned me to work outside of my medical restrictions." (Pl.'s Opp. at Ex. 2.)

Although defendant is correct to assert that plaintiff must present her EEO charge with some specificity in order for exhaustion to occur, defendant's application of the rule ignores both the posture of the motion and the light in which the Court should read the EEO charge. Plaintiff's January 2009 amended EEO charge clearly states that she believes that defendant discriminated against her based on her mental impairment by placing her in a position outside of her medical restrictions. Given that defendant had worked in the same position since 1994 and her only reassignment in fourteen years was to the Day Treatment Program immediately preceding the filing of her amended EEO charge (Compl. ¶ 1), that charge is reasonably related to the present claim because they are the same adverse action. Here again, the *Williams* rule is applicable: plaintiff's specification of PTSD from "mental impairment," and her specification of the Day Treatment Program position from "work outside of my medical restrictions," does not mean that she failed to exhaust because the claims were not reasonably related. Further, plaintiff's statement also fulfills the purpose of the EEO scheme, to put the employer on notice of a specific act of discrimination.

Third, defendant argues that two documents generated during the investigation, the District's "Statement of Position" to the OHR (Def.'s Rep. at Ex. A) and plaintiff's June 28, 2009 response letter (Pl.'s Opp. at Ex. 3), were in the context of the first EEO charge; thus, any discussion of disability based on mental impairment "can only be read as background" to

plaintiff's ankle injury claim. (Def.'s Rep. at 5-8.) The Court finds this argument unpersuasive because defendant's Statement of Position and plaintiff's letter postdate the amended EEO charge by at least five months, and all three documents carry the same EEOC charge number relating to the same case. (Def.'s Rep. at Ex. A; Pl.'s Opp. at Ex. 2, 3.) Although defendant seems to have some difficulty getting through the "stream conscious prose" within the "rambling single spaced document that purports to be plaintiff's response [letter]" (Rep. at 5-8), the Court finds plaintiff's letter to be sufficiently informative. In that letter plaintiff repeatedly mentions PTSD in the context of the ADA and her employer's failure to accommodate that disability. (Pl.'s Opp. at Ex. 3.) This magnifies the already sufficiently related claim in plaintiff's January 2009 amended EEO charge and provides evidence that the subsequent investigation further put defendant on notice that plaintiff believed her reassignment to the Day Treatment Program was discriminatory because it failed to address concerns she had raised about her mental impairment.

Fourth, defendant asserts that an application for additional sick leave hours based on PTSD that plaintiff filed with the EEO was not enough to put defendant or the EEOC on notice about a potential lawsuit. (Def.'s Rep. at 8-9.) Because the Court finds that plaintiff's amended EEO charge is reasonably related to the charge now before the Court, this argument is moot. Taken together, the Court finds that plaintiff's amended EEO charge and the subsequent investigation were reasonably related to plaintiff's present claim. Therefore, plaintiff exhausted her administrative remedies as to this claim.

### C. Exhaustion of ADEA Claims

Plaintiff claims that defendant discriminated against her based on her age by denying her promotions to two positions, QIC and HCBSC. (Compl. ¶¶ 30-32.) Defendant argues that plaintiff has failed to exhaust her age discrimination claim because her present claim is not

reasonably related to the charges she originally made with the EEO. (Def.'s Mot. at 17-18; Def.'s Rep. at 9-13.) The Court disagrees and will deny defendant's motion as to this claim.

Defendant first argues that plaintiff's initial EEO charge is unrelated to the present claim. (Def.'s Rep. at 9-10.) This charge states:

> Sometime in April 2008, the CEO stated, "You look really good for your age."
>
> Also in April 2008, a personal message (verbal) was relayed during the general staff meeting that employees (over 40) would have to look for another job.
>
> On occasions, the Director of Adult Services would ask me my age.

(Def.'s Mot. at Ex. B.) Clearly, this initial charge does not address the denial of promotion based on age and, thus, is not reasonably related to plaintiff's current age discrimination claim.

However, plaintiff's amended EEO charge states, "I have been denied promotions because of my age." (Pl.'s Opp. at Ex. 2.) This amended complaint, filed in January 2009, immediately followed plaintiff's failed attempts to gain either the QIC position or the HCBSC position. That plaintiff's present claim is a more specific version of her EEO charge does not mean the two are unrelated. Reading the EEO charge favorably for the complainant and in the light that it should not be held to the same standard as a legal pleading, the Court finds that plaintiff's amended EEO charge and the present claim are reasonably related.

Defendant would like the Court to follow *Vinson v. Ford Motor Co.*, 806 F.2d 686 (6th Cir. 1986), where the Sixth Circuit affirmed the district court's judgment notwithstanding the verdict because the plaintiff, who won an age discrimination claim in a jury trial, had not clearly stated in his EEO charge that he was demoted because of his age. (Def.'s Rep. at 13.) However, defendant misinterprets that case. In *Vinson*, the plaintiff made two claims based on age discrimination; one was a discriminatory demotion and the other was a discriminatory failure to

18

promote. *Vinson*, 806 F.2d at 688. The plaintiff, however, had never noted the demotion on any EEO forms and only mentioned it once during an EEO interview that focused on his failure-to-promote claim, which appeared in his initial EEO charge. *Id.* Thus, the Sixth Circuit upheld the judgment on the demotion claim because the plaintiff had not exhausted that claim. *Id.* Here, plaintiff's failure-to-promote claim is dissimilar to the *Vinson* demotion charge because plaintiff clearly states in her amended EEO charge that she believes she was denied promotions because of her age. Accordingly, defendant's motion as to this claim will be denied.

## III. DCHRA

Plaintiff originally brought parallel claims under the DCHRA for each claim in her Complaint. (Compl. ¶¶ 22, 28, 32, 34.) After defendant filed its Motion to Dismiss asserting several reasons why the DCHRA claims were invalid (Def.'s Mot. at 7-14), plaintiff concedes that she failed to give timely notice to the Mayor as required by D.C. Code § 12-309 ("An action may not be maintained against the District . . . unless, within six months after the injury or damage was sustained, the claimant . . . has given notice in writing to the Mayor . . . of the approximate time, place, cause, and circumstances of the injury or damage.").

Further, defendant relies on an October 26, 2010 affidavit from Tamonica Heard, the Manager of Settlements and Judgments for the Tort Liability Division within the District of Columbia Office of Risk Management. (Def.'s Mot. at Ex. A ¶ 1.) In the affidavit, Heard notes that her office manages all of the correspondence that falls under D.C. Code § 12-309 and that she was unable to find any evidence that plaintiff had contacted the Mayor.

Defendant's motion to dismiss the relevant portions of plaintiff's Claims under the DCHRA will therefore be granted.

**CONCLUSION**

For the foregoing reasons, the Court denies defendant's motion for summary judgment as to the Title VII sexual harassment claim under Count I, the ADA claim under Count II, the ADEA claim under Count III, and two Title VII retaliation claims under Count IV (i.e., the adverse treatment resulting from the transfer to the Day Treatment Program and the failure to promote). The Court grants defendant's motion for summary judgment as to the four other claims of retaliation in Count IV (i.e., charging plaintiff thirty-two hours AWOL, failure to return plaintiff to her former position, eliminating plaintiff's position through RIF, and failing to pay plaintiff severance). Finally, the Court dismisses all portions of Counts I, II, III, and IV that have been brought under the DCHRA.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: April 14, 2011